No. 14-1019
(Judge Wheeler)

_____

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
_____

MATTHEW ALLENSWORTH, *et al.*,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

_____

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

_____

JOYCE BRANDA
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

DEBORAH A. BYNUM
Assistant Director

EMMA E. BOND
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tele:  (202) 353-0521
Fax:   (202) 514-8624

OF COUNSEL
ADAM W. BOYER
Assistant General Counsel
U.S. Department of Justice
Federal Bureau of Prisons
Employment Law Branch
344 Marine Forces Drive
Grand Prairie, Texas 75051

December 19, 2014                    Attorneys for Defendant

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................... i

TABLE OF AUTHORITIES ................................................................................ iii

ISSUES PRESENTED ......................................................................................... 2

STATEMENT OF THE CASE ............................................................................. 3

    I.      Nature Of The Case ................................................................................ 3

    II.     Statement Of Facts ................................................................................. 3

          A.     Plaintiffs' Schedules Were Agreed Upon By The Union And
               The Agency ................................................................................. 3

          B.     Plaintiffs Previously Invoked Arbitration For An Overtime
               And Premium Pay Grievance, Which Resulted In A Final Settlement ...... 5

Summary Of The Argument ................................................................................ 6

Argument ............................................................................................................ 7

    I.      Standard Of Review ............................................................................... 7

    II.     The Plaintiffs' Overtime And Premium Pay Claims Are Barred
          By Res Judicata ...................................................................................... 8

          A.     The Parties In This Case Are Identical To, Or In Privity With, The
               Parties To The Arbitration ........................................................ 9

          B.     The Arbitration Resulted In A Final Judgment On The Merits For
               Purposes Of Claim Preclusion ................................................. 10

               1.     Res Judicata Applies To Arbitration Proceedings ........................ 11

               2.     Res Judicata Applies Even Though The Arbitration
                    Concluded In A Settlement Agreement ........................................ 13

           C.     The Prior Arbitration Proceeding Was Based On The Same
               Transactional Facts As Plaintiffs' Current FLSA And Premium Pay
               Claims ..................................................................................... 15

    III.    Plaintiffs Waived Their Current Overtime And Premium Pay Claims ................. 19

IV.    Plaintiffs Are Not Entitled To Sunday Premium Pay For The Monday
Morning Watch Shift ............................................................................ 20

    A.    The Portion Of The Shift Performed On Sunday Is Overtime Work
That Is Not Entitled To Premium Pay....................................................... 20

    B.    The Shift Is Not An "8-Hour Period Of Service" .................................... 23

V.    For The Remaining Days, Plaintiffs Only Worked Eight Hours Per
Shift And Therefore Are Not Entitled To Overtime ............................................ 24

    A.    This Court's Predecessor Held A 15-Minute Break Was
Not Compensable....................................................................................... 25

    B.    The Break Is Not Compensable Pursuant To Applicable Regulations
And Administrative Interpretations .......................................................... 26

    C.    Applicable Precedent Confirms That The 15-Minute Break Is
Not Work ................................................................................................... 29

VI.    There Is No Willful Violation Of The FLSA, Because Plaintiffs'
Schedule Was Agreed Upon By The Union And The Agency............................ 30

Conclusion ...................................................................................................................... 31

# TABLE OF AUTHORITIES

## CASES

*Aamold v. United States*,
   39 Fed. Cl. 735 (1997) .................................................................................................... 31

*Acumed LLC v. Stryker Corp.*,
   525 F.3d 1319 (Fed. Cir. 2008)..................................................................................... 11

*Acuna v. U.S.*,
   479 F.2d 1356 (Ct. Cl. 1973)*, 416 U.S. 905 (1974) ....................................................... 22

*Agner v. United States*,
   8 Cl. Ct. 635 (Cl. Ct. 1985), *aff'd*, 795 F.2d 1017 (Fed. Cir. 1986)..................... 26, 29–30

*Ammez, Inc. v. United States*,
   334 F.3d 1052 (Fed. Cir. 2003)........................................................................................ 9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...................................................................................................... 7, 8

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946)......................................................................................................... 24

*Armour & Co. v. Wantock*,
   323 U.S. 126 (1944)................................................................................................... 24, 29

*Barrentine v. Ark.-Best Freight Sys., Inc.*,
   450 U.S. 728 (1981)......................................................................................................... 13

*Baylor v. United States*,
   198 Ct. Cl. 331 (1972) .................................................................................................... 30

*Caraballo v. City of Chicago*,
   969 F. Supp. 2d 1008 (N.D. Ill. 2013) ............................................................................ 32

*Catalfamo v. United States*,
   200 Ct. Cl. 689 (1973) ..................................................................................... 25, 26, 28

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................................................... 7–8

*Epic Metals Corp. v. H.H. Robertson Co.*,
   870 F.2d 1574 (Fed.Cir.1989)................................................................................. 14, 15

*Federated Dep't Stores, Inc. v. Moitie*,
  452 U.S. 394 (1981)............................................................................... 9

*Ford–Clifton v. Dep't of Veterans Affairs*,
  661 F.3d 655 (Fed. Cir. 2011)........................................................ 13, 14, 29

*Gilmer v. Interstate/Johnson Lane Corp.*,
  500 U.S. 20 (1991).............................................................................. 13

*Hallco Mfg. Co. v. Foster*,
  256 F.3d 1290 (Fed. Cir. 2001)............................................................. 15

*Howard v. City of Springfield, Ill.*,
  274 F.3d 1141 (7th Cir. 2001) .............................................................. 31

*In Re Sommerhauser*,
  58 Comp. Gen. 536 (1979) .............................................................. 21, 23

*Matsushita Elec. Indus. Co. v. Zenith Corp.*,
  475 U.S. 574 (1986)............................................................................... 8

*McLaughlin v. Richland Shoe Co.*,
  486 U.S. 128 (1988).............................................................................. 30

*Nafco Oil & Gas, Inc. v. Appleman,.*
  380 F.2d 323 (10th Cir. 1967) ............................................................... 4

*Phillips/May Corp. v. United States*,
  524 F.3d 1264 (Fed. Cir. 2008)............................................................... 9

*Plotner v. AT&T Corp.*,
  224 F.3d 1161 (10th Cir. 2000) .............................................................. 9

*RF Del., Inc. v. Pac. Keystone Techs., Inc.*,
  326 F.3d 1255 (Fed. Cir. 2003)............................................................. 13

*Stearn v. Dep't of Navy*,
  280 F.3d 1376 (Fed. Cir. 2002)....................................................... 8–9, 18

*Sullivan v. Dep't of Justice*,
  282 F. App'x 828 (Fed. Cir. 2008) ........................................................ 14

*Vita-Mix Corp. v. Basic Holding, Inc.*,
  581 F.3d 1317 (Fed. Cir. 2009)............................................................... 8

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
 200 F.3d 795 (Fed. Cir. 1999) ............................................................................ 8

*Zumerling v. Devine*,
 769 F.2d 745 (Fed. Cir. 1985) ........................................................................... 27

*14 Penn Plaza LLC v. Pyett*,
 556 U.S. 247 (2009) ........................................................................................... 13

## STATUTES

5 U.S.C. § 5542(a) .................................................................................................. 20

5 U.S.C. § 5546 ........................................................................................... 21, 22, 24

5 U.S.C. § 7111 ................................................................................................... 4, 10

5 U.S.C. § 7121 ..................................................................................................... 11

29 U.S.C. § 255 ..................................................................................................... 30

## REGULATIONS

5 C.F.R. § 550.103 .................................................................................................. 20

5 C.F.R. § 551.104 ........................................................................................... 24, 30

5 C.F.R. § 551.411 .................................................................................................. 26

5 C.F.R. § 551.501 .................................................................................................. 24

5 C.F.R. § 2421.14 .................................................................................................. 10

29 C.F.R. § 785.19 ........................................................................................... 27, 28

## LEGISLATIVE HISTORY

H. Rep. No. 93– 913, 93rd Cong., 2d
Sess., *reprinted in* 1974 U.S.C.C.A.N. 2811, 2837 .................................................. 27

## RULES

R. Ct. Fed. Cl. 12(a)(4) ............................................................................................ 31

R. Ct. Fed. Cl. 56 ................................................................................................. 1, 7

## MISCELLANEOUS

Department of Labor (DOL) Wage and Hour Division Field Operations Handbook
(FOH) § 31.23 ................................................................................................................ 26–29

Opinion Letter,
    2004 WL 3177871 (Dep't of Labor Nov. 22, 2004)........................................................ 28

Restatement (Second) of Judgments § 17 ...................................................................... 14

Restatement (Second) § 24 ....................................................................................... 15–18

Restatement (Second) of Judgments § 27 ...................................................................... 14

Restatement (Second) of Judgments § 83 ...................................................................... 12

Restatement (Second) of Judgments § 84 ............................................................ 11–12, 15

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MATTHEW ALLENSWORTH, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 14-1019 |
| | ) | (Judge Thomas Wheeler) |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court grant summary judgment dismissing the plaintiffs' overtime and premium pay claims.  These claims arise from plaintiffs' work as correctional officers on the morning watch shift, which extends from 11:45 p.m. until 8:00 a.m. each day.  In particular, plaintiffs allege that they are entitled to Sunday premium pay for working the Monday morning watch shift, the first 15 minutes of which occur on Sunday night.  They also seek overtime pay for an alleged 15 minutes of overtime per shift for the remaining morning watch shifts.

As an initial matter, these claims are barred by res judicata and waiver, based on the prior resolution of an overtime and premium pay grievance brought on the plaintiffs' behalf.   In the alternative, plaintiffs' premium pay and overtime claims should be denied on the merits.  There is no genuine factual dispute that the first 15 minutes of plaintiffs' Monday morning watch shift is overtime, which is not eligible for the Sunday premium.  Moreover, plaintiffs are not entitled to 15 minutes of overtime per shift for the remaining days, because they only worked eight hours per shift.

Finally, in the event the Court does not dismiss this case, we request at least partial summary judgment that there has been no willful violation of the Fair Labor Standards Act (FLSA), because the Bureau of Prisons (BOP or agency) reasonably believed that the morning watch schedules complied with the FLSA.  Indeed, those schedules were agreed upon with the plaintiffs' union for the express purpose of reducing overtime.  In support of this motion, we rely upon the pleadings, the following brief, our proposed statement of uncontroverted facts, and the attached appendix.

## ISSUES PRESENTED

1.   Whether plaintiffs' overtime and premium pay claims are barred by res judicata, when those claims were, or could have been, brought in a prior arbitration proceeding against the agency that resulted in a final settlement agreement.

2.   Whether plaintiffs' overtime and premium pay claims were waived in the prior settlement agreement, which released the BOP from the overtime and premium pay claims asserted in the prior arbitration proceeding.

3.   Sunday premium pay is only available for work that is performed during a regularly scheduled 8-hour shift, and that is not overtime work.   Whether the plaintiffs are entitled to Sunday premium pay for the Monday morning watch shift, when the first 15 minutes was overtime work that occurred on Sunday, and the shift was longer than 8 hours.

4.   Whether plaintiffs are entitled to overtime for the remaining morning watch shifts when their schedules were negotiated with the union for the stated purpose of reducing overtime costs, and only required eight hours of work per shift, plus a 15-minute, duty-free break.

5. With respect to plaintiffs' allegations of a "willful" violation of the FLSA, whether the BOP reasonably believed that the morning watch schedule complied with the FLSA when that

2

schedule was agreed upon by the agency and the union for the stated purpose of reducing overtime compensation.

## STATEMENT OF THE CASE

### I.  Nature Of The Case

Plaintiffs are current and former correctional officers employed by the BOP at its Federal Correctional Institution located in Texarkana, Texas (FCI Texarkana).  On October 20, 2014, plaintiffs filed suit in this Court alleging violations of the Back Pay Act and the FLSA.  Compl. 1–10; Def. Proposed Findings Of Uncontroverted Fact (PFUF) ¶ 31.  Specifically, plaintiffs allege that the agency improperly failed to pay Sunday premium pay to correctional officers assigned to the Monday morning watch shift, the first 15 minutes of which occurred from 11:45 p.m. until midnight on Sunday.  Compl. ¶ 17.  For the remaining morning watch shifts, plaintiffs allege that the agency willfully violated the FLSA by failing to compensate correctional officers for 15 minutes of overtime per shift.  *Id.* at ¶ 25–26.  As relief, plaintiffs request FLSA overtime compensation for the past three years, Sunday premium pay for the past six years, plus attorney fees, liquidated damages, interest, and other relevant costs.  *Id.* at 6–9.

### II.  Statement Of Facts

### A.  Plaintiffs' Schedules Were Agreed Upon By The Union And The Agency

The plaintiffs are current and former correctional officers assigned to work the agency's morning watch shift for five days each week.[1]  Compl. ¶¶ 9–11.  Most of the morning watch

---

[1]  For purposes of this motion, the Government accepts the allegations in the complaint that each of the named plaintiffs was a correctional officer assigned to the morning watch post for the relevant time period.  However, the Government respectfully reserves the right to challenge this assertion in the event that this motion is denied.  *See Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 325 (10th Cir. 1967) ("[B]y the filing of a motion [for summary

3

correctional officer positions have duty hours extending from 11:45 p.m. until 8:00 a.m. the following morning. A42[2]; Compl. at ¶ 11. For the Monday morning watch shift, employees receive 15 minutes of overtime, for the first 15 minutes of the shift. PFUF ¶ 11. For the remaining days of the week, the agency provides a 15-minute break, during which "the officer will not be required to perform any duties, with the exception of responding to an emergency situation." A42–43. Officers are paid for eight hours of work on these days. Compl. ¶ 14.

The morning watch schedule was negotiated between the agency and the American Federation of Government Employees (AFGE) Council of Prison Locals, Local No. 2459 (AFGE or union). AFGE is the exclusive representative for all bargaining unit employees of the BOP, including correctional officers. PFUF ¶¶ 2–4; A16–18; *see also* 5 U.S.C. § 7111. In May 2004, the union and the agency signed a Memorandum of Understanding (MOU) agreeing to the morning watch schedule, which has been followed at all relevant times since that date. PFUF ¶¶ 7, 14.

In particular, the MOU provides that Perimeter Patrol 1 and Perimeter Patrol 2 morning watch positions have duty hours from 12:00 a.m. until 8:00 a.m. PFUF ¶ 8. These positions are not at issue in this case. The MOU further provides that the other morning watch positions (hereinafter morning watch positions) have duty hours from 11:45 p.m. until 8:00 a.m. PFUF ¶ 9. These morning watch positions receive a 15-minute break each shift, except for the Monday morning watch shift. PFUF ¶ 10. Officers are relieved from duty during this break. A42, 46–47. On the Monday morning watch post, employees do not receive a 15-minute break, but they

---

judgment] a party concedes that no issue of fact exists under the theory he is advancing, but does not thereby so concede that no issues remain in the event his adversary's theory is adopted.").

   [2]  A___ refers to a page in the appendix filed with this motion.

are paid 15 minutes of overtime for the first 15 minutes of the shift.  PFUF ¶ 11.  The union and

the BOP agreed to these schedules in order "to maintain overlapping shifts while at the same

time reduce overtime costs and Sunday premium pay and avoid any future portal to portal issues

or claims."  A42.

### B.  Plaintiffs Previously Invoked Arbitration For An Overtime And Premium Pay Grievance, Which Resulted In A Final Settlement

Approximately ten months before plaintiffs filed their complaint in this Court, the union

invoked arbitration for an overtime and premium pay grievance.  PFUF ¶¶  15–16, 22; A11–14.

This grievance asserted "continuing violation[s]" of the overtime laws pursuant to the FLSA and

the premium pay laws in Title 5.  A11.  These alleged violations included, but were "not limited

to," certain morning watch posts—the same posts at issue in this case.  A11–12.  The grievance

alleged, among other things, that the agency improperly required employees "to perform work

prior to and after the completion of their shifts."  A11.  For these alleged violations, the union

sought "relief to the fullest extent available under the law," including back pay "under the FLSA

and Title 5" for affected bargaining unit members; as well as liquidated damages, attorney fees,

interest, and expenses pursuant to the FLSA and the Back Pay Act. PFUF ¶¶ 20–21.

The parties selected an arbitrator, pursuant to the procedures set forth in the Master

Agreement between the BOP and the union.  PFUF ¶¶ 23–24.  Before proceeding to arbitration,

however, the parties arrived at a settlement agreement "in full and complete settlement" of the

arbitration.  A1.  The BOP agreed to pay $85,000.00 to the "current and former bargaining unit

employees who are entitled to receive damages," as well as $56,375.00 in attorney fees.  A2,

4. The union, in return, "warrant[ed] and represent[ed] that no other action or suit with respect to

the claims that are set forth in the grievance . . . will be filed in, or submitted to, any court or any

5

administrative forum." A1–2.  The settlement agreement was executed on October 23, 2014.

A7.

Plaintiffs filed suit in this Court on October 20, 2014—after the settlement agreement had

been negotiated, but three days before it was signed.  Like the previously-settled grievance,

plaintiffs' current complaint alleges overtime and premium pay violations for morning watch

employees.

## Summary Of The Argument

Plaintiffs' claims should be dismissed as barred by the prior arbitration proceedings,

because all three requirements for res judicata are satisfied in this case.  First, the plaintiffs are

among the collective bargaining members that benefitted from the arbitration proceedings, and

are therefore either identical to, or in privity with, the union that invoked the arbitration.  Second,

the arbitrator's cancellation of the arbitration proceeding pursuant to the parties' settlement is a

final judgment on the merits for purposes of claim preclusion.  Finally, this case and the

arbitration both addressed overtime and premium pay claims for the same employees, and are

therefore based on the same set of operative facts.  Because plaintiffs' current claims either were,

or could have been, brought in the prior arbitration, they must be dismissed as barred by res

judicata.

The complaint should be dismissed for the additional reason that the settlement

agreement releases the agency from all claims raised in the union's prior grievance, including

plaintiffs' current overtime and premium pay claims.

Turning to the merits of plaintiffs' Sunday premium pay claim, there is no genuine

factual dispute that the first 15 minutes of the Monday morning watch shift (from 11:45 p.m.

until midnight on Sunday) is overtime work.  Because the Sunday premium only applies to work

"which is not overtime work," plaintiffs are not entitled to premium pay pursuant to Title 5. Plaintiffs' premium pay claims are meritless for the additional reason that the Monday morning watch shift is not an eight-hour period of service, as required by the Sunday pay statute.

Plaintiffs' overtime claims similarly lack merit.  To prove an FLSA overtime claim, plaintiffs must show that they worked for more than forty hours a week or more than eight hours a day without proper overtime pay.  Morning watch employees enjoyed a 15-minute "duty free" break for their Tuesday-to-Sunday shifts, which the union agreed to for the express purpose of reducing overtime costs.  Plaintiffs therefore worked no more than eight hours during these shifts and are not entitled to overtime pay.

Finally, even assuming that plaintiffs could prove an FLSA violation—which they cannot—there is no genuine factual dispute that the agency reasonably believed that the morning watch schedule complied with the FLSA.  The MOU between the union and the agency demonstrates that both parties reasonably (and correctly) believed that these schedules did not violate the FLSA.  Accordingly, plaintiffs' claim that the agency willfully violated the FLSA should be denied as a matter of law.

## Argument

### I.   Standard Of Review

A court should grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  RCFC 56(a). Only disputes over "facts that might affect the outcome of the suit" will preclude the granting of summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Mere denials, conclusory statements, or evidence that is simply colorable or not significantly probative are insufficient by themselves to force a case to trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

7

(1986); *see also Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1323 (Fed. Cir. 2009)

(citing *Anderson*, 477 U.S. at 252) (stating that "a mere scintilla of evidence" is not sufficient to

deny summary judgment).

The moving party bears "the initial responsibility of informing the [court] of the basis for

its motion, and identifying those portions of [the record that] it believes demonstrates the

absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant makes

this showing, the burden shifts to the nonmoving party to identify specific facts demonstrating

that there is a material factual dispute. *Id.* at 324. All permissible inferences that can be "drawn

from the underlying facts" must be viewed in the light most favorable to the non-movant.

*Matsushita Elec. Indus. Co. v. Zenith Corp.*, 475 U.S. 574, 587 (1986). When, as here, the

ultimate burden of proving overtime and premium pay violations rests with the non-moving

party, the movant may satisfy its initial burden "either by providing evidence that negates an

essential element of the opposing party's case, or by showing that . . . the opposer will not be

able to prove an essential element of its case." *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200

F.3d 795, 807 (Fed. Cir. 1999) (citing *Celotex*, 477 U.S. at 322–23).

## II.    The Plaintiffs' Overtime And Premium Pay Claims Are Barred By Res Judicata

Plaintiffs' claims are barred by res judicata, because their union representative previously

obtained a final settlement for overtime and premium pay claims for the same time period at

issue in this case. Because the current claims either were raised, or could have been raised, in

the prior arbitration, plaintiffs are precluded from seeking additional relief in this Court.

"Under the doctrine of res judicata, a final judgment on the merits of an action precludes

the parties from relitigating issues that were or could have been raised in that action." *Stearn v.

Dep't of Navy*, 280 F.3d 1376, 1380 (Fed. Cir. 2002) (citing *Federated Dep't Stores, Inc. v.*

*Moitie*, 452 U.S. 394 (1981)).  Also known as claim preclusion, res judicata "applies when '(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first.'" *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1268 (Fed. Cir. 2008) (quoting *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003)).  Res judicata presents a question of law that is amenable to resolution at summary judgment.  *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1168 (10th Cir. 2000); *see also Stearn*, 280 F.3d at 1380 (citations omitted) ("A determination of whether res judicata applies to the facts of a case is a matter of law.").

## A.   The Parties In This Case Are Identical To, Or In Privity With, The Parties To The Arbitration

The parties in this case are the same as, or in privity with, the parties to the prior arbitration, thereby satisfying the first requirement for claim preclusion.  The party defending both proceedings is the same; the BOP defended the arbitration, and, in the form of the United States, is the defendant in this case.  On the other side, the plaintiffs are in privity with the union that invoked the arbitration.

Parties are in privity when they "hav[e] a legally recognized interest in the same subject matter (such as transaction, proceeding, or piece of property)."  Black's Law Dictionary 9th ed. ("privity").  The plaintiffs had a "legally recognized interest" in the arbitration, because they were collective bargaining members of the union that invoked it.[3]  *See* PFUF ¶ 5; A42.  In particular, plaintiffs had an interest in the arbitration because the underlying grievance requested FLSA and Title 5 back pay on behalf of "each affected bargaining unit member who expresses

---

[3]   The plaintiffs are bargaining unit employees pursuant to Title 5, Chapter 71, *see also* 5 C.F.R. § 2421.14, and the union is the exclusive representative for all bargaining unit employees of the agency, A12.  *See also* 5 U.S.C. § 7111.

interest in receiving damages." A12. The settlement of this grievance benefited the bargaining unit employees because it transferred money from the BOP "to the Backpay Participants (*i.e.*, current and former bargaining unit employees who are entitled to receive damages)." A2. As bargaining unit employees, the plaintiffs therefore had a legally recognized interest in the arbitration. Furthermore, the current local union president, John Tosh, who signed the settlement agreement on behalf of the bargaining unit, is among the named plaintiffs in this case. A7; Compl. 2. Because the parties in this case and the prior arbitration are either identical or in privity, the first requirement for claim preclusion is satisfied.

### B.  The Arbitration Resulted In A Final Judgment On The Merits For Purposes Of Claim Preclusion

The arbitrator's cancellation of the arbitration proceedings pursuant to the settlement agreement constitutes a final judgment for purposes of res judicata. As discussed below, principles of res judicata apply in arbitration proceedings to the same extent, and with the same limitations, as judicial proceedings. Moreover, the United States Court of Appeals for the Federal Circuit has made clear that a final dismissal based on a settlement agreement constitutes a final judgment that precludes later claims that were, or could have been, brought in the first case.

### i.     Res Judicata Applies To Arbitration Proceedings

A valid and final arbitration award typically "has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court." Restatement (Second) of Judgments (Restatement) § 84 (1); *see also Acumed LLC v. Stryker Corp.*, 525 F.3d 1319, 1323 (Fed. Cir. 2008) (stating the Federal Circuit is guided by the Restatement "[i]n applying the doctrine of claim preclusion").   "Assuming that the arbitration procedure has the elements of validity and has become final, it should be accorded claim preclusive effect unless a scheme of remedies requires that it be denied such effect." Restatement § 84 cmt. b.

The prior arbitration proceeding in this case had all the elements of validity required for preclusive effect.  First, the arbitrator had jurisdiction to resolve the overtime and premium pay claims that were before it.  Section 7121(a) of Title 5 provides that collective bargaining agreements "shall provide procedures for the settlement of grievances, including questions of arbitrability."   Consistent with that provision, the Master Agreement between the union and the agency established a "grievance procedure" for "all grievances properly grievable under 5 USC 7121."  A29.  Section 7121(b) further requires that "any grievance not satisfactorily settled under the negotiated grievance procedure shall be subject to binding arbitration, which may be invoked by either the exclusive representative or the agency."  5 U.S.C. § 7121(b)(1)(C)(iii).  The Master Agreement thus provided that either party may submit an issue to arbitration, as long as it "notif[ied] the other party in writing of this intent" within applicable time limits.  A32. Accordingly, the Master Agreement established a "binding" arbitration framework that is sanctioned by statute.

That binding arbitration procedure was followed in this case.  On December 31, 2013, the union filed a grievance alleging a violation of the Master Agreement, in the form of FLSA and premium pay violations.  A11.  Two months later, the union invoked the binding arbitration proceeding.  A11.  Pursuant to statute and the Master Agreement, the ensuing arbitration proceeding was the proper venue to fully and finally resolve the union's overtime and premium pay claims.

Not only did the arbitrator possess jurisdiction, but the arbitration procedures required by the Master Agreement also contain all the "essential elements of adjudication."  *See* Restatement § 84(3)(b), 83(2).  These elements include (1) notice, (2) the right to submit evidence and legal argumentation, (3) "formulation of issues of law and fact," and (4) a "rule of finality" designating a point in the proceeding when "a final decision is rendered."  *Id.* § 83(2).

First, the Master Agreement requires that the party invoking arbitration "notify the other party in writing of this intent," A32, and this procedure was followed in this case, A11.  The element of notice is therefore satisfied.  Second, both parties may present witnesses at the arbitration hearing, and may bring representatives, A32, thus satisfying the right to submit evidence and legal arguments.  Third, the party invoking arbitration must identify an "issue" to be arbitrated, A32, which in this case was the alleged overtime and premium pay violations, A11; the prior arbitration therefore featured the "formulation of issues of law and fact." Restatement § 83(2).  Finally, the arbitration procedures satisfied the rule of finality, because they required the arbitrator "to render a decision as quickly as possible" after the hearing, and provided that the resulting decision "shall be binding on the parties."  A33.  The arbitration proceeding therefore contained all the elements of validity required for preclusive effect.  *See* Restatement § 83(2).

12

Moreover, nothing in the Master Agreement or the relevant statutory scheme prohibited the current overtime and premium pay claims from being resolved in the prior arbitration. This case is not like other situations where employees only agreed to arbitrate contractual rights, therefore rendering arbitrators without authority to decide statutory claims. For example, in *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 731 (1981), the Supreme Court held that a prior arbitration did not preclude an employee's later FLSA claim, because the arbitrator lacked authority to resolve that statutory claim. "'Since the employees there had not agreed to arbitrate their statutory claims, and the labor arbitrators were not authorized to resolve such claims, the arbitration in [*Barrentine* and related cases] understandably was held not to preclude subsequent statutory actions.'" *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 264 (2009) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 35 (1991)). The arbitrator in this case, on the other hand, did have authority to adjudicate FLSA and premium pay violations, as demonstrated by the union's grievance invoking those statutes. *See* A11. There is no reason why the plaintiffs should be able to bring additional FLSA and premium pay claims in Federal Court when such claims were, or could have been, finally resolved in the prior arbitration proceeding. In sum, the prior arbitration proceeding is entitled to res judicata effect.

> **ii.**    **Res Judicata Applies Even Though The Arbitration Concluded In A Settlement Agreement**

The fact that the arbitration was cancelled pursuant to a settlement agreement does not deprive that proceeding of res judicata effect. Although the Federal Circuit has declined to apply *issue* preclusion in the context of an extrajudicial settlement, *RF Del., Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1261 (Fed. Cir. 2003), it has applied *claim* preclusion in cases of dismissal following such settlement, *Ford–Clifton v. Dep't of Veterans Affairs*, 661 F.3d 655,

13

660 (Fed. Cir. 2011).  That distinction makes sense, because issue preclusion requires the higher showing that the issues at stake have been "actually litigated and determined" by the earlier judgment, Restatement § 27, whereas claim preclusion only requires a final judgment on the merits, *id.* § 17.

Indeed, the Federal Circuit has made clear that "an earlier dismissal based on a settlement agreement constitutes a final judgment on the merits in a res judicata analysis." *Ford–Clifton*, 661 F.3d at 660 (citing *Epic Metals Corp. v. H.H. Robertson Co.*, 870 F.2d 1574, 1576 (Fed. Cir. 1989)).  In *Ford-Clifton*, the Federal Circuit barred a former Department of Veterans Affairs (VA) employee from filing a second claim at the Merit Systems Protection Board (MSPB), because her first MSPB claim had been dismissed pursuant to a settlement agreement with the VA.  The Federal Circuit held that when an administrative agency issues a final order dismissing a case pursuant to a settlement agreement, "a subsequent appeal is barred by *res judicata*."  *Id.* In reaching that decision, the court relied on a prior non-precedential decision "affirming dismissal on *res judicata* grounds" when the petitioner's second MSPB claim "arose from the same event that [the petitioner] previously challenged and eventually settled.'"  *Id.* at 661 (quoting *Sullivan v. Dep't of Justice*, 282 F. App'x 828, 830 (Fed. Cir. 2008)).

The same rule applies in this case.  As in *Sullivan*, plaintiffs' current claims arise from the same events that they "previously challenged and eventually settled."  *See id.* (quoting *Sullivan*, 282 F. App'x 830).  Moreover, just as the administrative judge in *Ford-Clifton* dismissed the first MSPB claim pursuant to the parties' settlement agreement, the arbitrator in this case cancelled the union's overtime and premium pay grievance based on the parties' settlement.  *See* A8–10.  The arbitrator's cancellation of the grievance "has the same effects under the rules of res judicata" as a dismissal by a court or an administrative agency.  *See*

14

Restatement § 84(1). That cancellation is therefore a final judgment that precludes the plaintiffs from bringing additional claims based on the same transactional facts.

Finally, nothing in the settlement agreement expressly reserved any claims for future litigation. Although "a party may expressly reserve in a consent judgment the right to litigate some or all issues that would have otherwise been barred between the same parties," the absence of such an express reservation bars any future claims. *Hallco Mfg. Co. v. Foster*, 256 F.3d 1290, 1295 (Fed. Cir. 2001) (citing *Epic Metals*, 870 F.3d at 1576–77). Far from expressly reserving any future claims, the Settlement Agreement "remises, releases, and forever irrevocably discharges the United States Government, the Federal Bureau of Prisons, [and others] . . . from the claims asserted in this grievance, from January 2, 2011, up to the date that this Agreement is fully executed." A5. Notably, the agreement was executed three days *after* plaintiffs filed suit in this case, so no new claims accrued before plaintiffs filed their current claims.

Accordingly, the final cancellation of plaintiffs' prior arbitration proceeding constitutes a final judgment on the merits for purposes of claim preclusion.

### C. The Prior Arbitration Proceeding Was Based On The Same Transactional Facts As Plaintiffs' Current Overtime and Premium Pay Claims

Regarding the final criterion for res judicata, the current claims and the prior grievance both arise from alleged overtime and premium pay violations for the same employees, and therefore constitute the same claim for purposes of res judicata. In applying the doctrine of res judicata, the claim "includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement § 24(1). The scope of a "claim" must "be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or

motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Id.* § 24(2).

In *Phillips*, for example, the Federal Circuit held that all claims arising out of a particular Government contract were the "same claim" for purposes of claim preclusion, even though the contractor had appealed one "Inspection Claim" to this Court, and nine other claims to the Armed Services Board of Contract Appeals (board). 524 F.3d at 1272–73. The Inspection Claim challenged, among other things, the Government's alleged seventeen-day delay due to a new redesign requirement, whereas one of the board claims challenged a later sixteen-day delay caused by the same requirement. *Id.* Although these claims addressed different time periods, the Federal Circuit held "[t]he two claims plainly [were] based on a single set of operative facts," and were therefore the same claim for purposes of preclusion. *Id.*

The plaintiffs' current claims are likewise based on the same set of operative facts as their prior grievance. Both allege that morning watch employees are working overtime, and that the agency failed to compensate them for overtime and premium pay to which they are entitled. *Compare* A11 *with* Compl. 5–6. They also identify the same conduct that allegedly constitutes overtime work. The grievance enumerates activities such as "receiving or returning equipment, exchanging information, etc.," A11, and the complaint similarly includes activities such as "donning equipment, obtaining equipment . . . , [and] engaging in equipment and information exchanges," Compl. 5.

The only arguable difference between the grievance and the complaint is that the former targets pre- and post-shift work, whereas the latter focuses on the 15 minutes of alleged overtime during plaintiffs' shifts. *Compare* A11 *with* Compl. 5–6. Even this potential difference is illusory because the grievance was cast in broad and non-limiting terms. For example, it alleged

16

"a continuing violation of the Master Agreement . . . , including *but not limited to* . . . Article 3, section b., Governing Regulations." A11 (emphasis added) (stating "[t]his is a continuing violation of the overtime laws" pursuant to the FLSA and "the premium pay laws . . . under Title 5."). When describing the facts underlying the alleged overtime and premium pay violations, the grievance identified issues including, "but not limited to," certain Morning Watch, Day Watch, Evening Watch, and Relief Posts. A11–12. The grievance concluded by requesting "relief *to the fullest extent available under the law* for the Agency's wrongful failure to pay FLSA overtime pay to bargaining unit employees." A12 (emphasis added). In sum, the broad and inclusive claims in the grievance raised all potential FLSA and premium pay claims, including plaintiffs' claims in this case. Because they assert the same statutory violations for the same conduct, the complaint and the grievance raise the same claim, even under the narrowest definition of that term.

Even assuming the grievance did not expressly include the current overtime and premium pay allegations, the complaint nevertheless asserts the same claim as the grievance for purposes of res judicata. The Restatement's broad definition of a claim requires only that the second action arises from the same "transaction or series of connected transactions, out of which the [first] action arose." Restatement § 24(1). That standard is met in this case. To the extent that the grievance and the complaint address different time periods (pre- and post-shift overtime versus intra-shift overtime, respectively), this difference is no more significant than the differing allegations of delay found to constitute the same claim in *Phillips*. In *Phillips*, the court held that claims of contract delay for different time periods—one sixteen-day period, and a later seventeen-day period—were plainly based on the same set of operative facts. *Phillips*, 524 F.3d at 1272–73. In the same way, allegations of pre-and-post shift overtime are part of the same

17

"transaction, or series of connected transactions," as allegations of overtime during the shift, especially because both periods involve equipment and information exchanges between employees. *See* Restatement § 24(1). Alleged overtime before and after the shift is also "related in time [and] space" to work completed during the shift, and those claims would "form a convenient trial unit." *See id.* at § 24(2). Moreover, the fact that both claims invoke the same statutes—FLSA and Title 5—means that parties would normally expect such claims to be brought together. *See id.* § 24(2).

Finally, the dates alleged in the complaint overlap with the time period covered by the grievance. The complaint was filed on October 20, 2014, and alleges FLSA violations for the past three years—since October 20, 2011. Compl. 7. The grievance covers this entire time period, and more. *See* A2, 7 (stating the grievance covers claims extending from January 2, 2011 until October 23, 2014).

The complaint also alleges premium pay violations for the past six years. Compl. 5. The grievance covered the same time period, because it set no limit regarding the length of the alleged premium pay violation, and instead requested that the affected bargaining unit members "be made whole *in every way*," including an award of back pay under Title 5. A12. To the extent the grievance did not expressly invoke the six-year statute of limitations, it certainly could have done so. Because claim preclusion bars all claims that were brought, or could have been brought in the prior action, *Stearn*, 280 F.3d at 1380, plaintiffs are barred from pursuing their premium pay claims in this case.

For these reasons, plaintiffs' current claims arise out of the same transaction or set of transactions underlying the prior arbitration proceeding, and therefore present the same claims

18

for purposes of claim preclusion.  Accordingly, the Court should dismiss plaintiffs' complaint as barred by res judicata.

### III.     Plaintiffs Waived Their Current Overtime And Premium Pay Claims

In addition to being barred by res judicata, plaintiffs' current claims were waived in the settlement agreement.  This case is therefore like *Ford-Clifton*, in which the appellant's second MSPB claim was barred on the basis of waiver, in addition to res judicata.  661 F.3d at 661.

On behalf of the bargaining unit members, the union "waive[d] any right or entitlement to pursue or collect payment for . . . any overtime or FLSA claim asserted in this grievance for the time periods covered by this grievance."  A2.  Plaintiffs' current FLSA claims are therefore waived.  Regarding the premium pay claims, the "Release" section of the Settlement Agreement states that the union "forever irrevocably discharges the [Government] from the claims asserted in this grievance," which include premium pay claims.  A5, A11.  The settlement agreement therefore waives any overtime or premium pay claim for the conduct and time period alleged in the grievance.

As discussed above, the grievance is couched in broad and inclusive terms, which encompass the claims raised in plaintiffs' complaint.  *See supra* pp. 17–18.  Because the grievance and the complaint both allege violations of the same statutes, for the same period of time, and for the same activity, the settlement's waiver of all claims raised in the grievance bars the plaintiffs' claims in this case.  Accordingly, the plaintiffs' current overtime and premium pay claims should be dismissed.

**IV.    Plaintiffs Are Not Entitled To Sunday Premium Pay For The Monday Morning Watch Shift**

In the alternative, plaintiffs cannot prevail on their premium pay claims.  The Sunday pay statute provides that an employee who performs non-overtime work on Sunday, during a "regularly scheduled 8-hour period of service," is entitled to premium pay for that shift.  5 U.S.C. § 5546(a).[4]  Because the relevant portion of the Monday morning watch shift is "overtime work," and because that shift is not an "8-hour period of service," plaintiffs are not entitled to Sunday premium pay.

**A.    The Portion Of The Shift Performed On Sunday Is Overtime Work That Is Not Entitled To Premium Pay**

Plaintiffs are not entitled to premium pay for the Monday morning watch shift, because the first 15 minutes of that shift—from 11:45 p.m. until midnight on Sunday—are designated as overtime.  The Sunday pay statute emphasizes that employees are only entitled to the Sunday premium for work "which is *not overtime work* as defined by section 5542(a) of [Title 5]."  *Id.* (emphasis added).  The implementing regulation likewise provides that only "nonovertime work" is entitled to the Sunday premium. 5 C.F.R. § 550.103.

Pursuant to this regulatory scheme, an employee who works overtime on a Sunday is not entitled to Sunday premium pay for that shift.  For example, when an employee regularly worked one hour of overtime each Sunday, from 11:00 p.m. until midnight, and then completed his shift from midnight until 8:00 a.m. on Monday, the Comptroller General found he was not entitled to

---

[4]  Section 5546(a) provides in full:
> An employee who performs work during a regularly scheduled 8-hour period of service *which is not overtime work* as defined by section 5542(a) of this title a part of which is performed on Sunday is entitled to pay for the entire period of service at the rate of his basic pay, plus premium pay at a rate equal to 25 percent of his rate of basic pay."

5 U.S.C. § 5546(a) (emphasis added).

20

Sunday premium pay. *In re Sommerhauser*, 58 Comp. Gen. 536, 537–38 (1979). The employee in *Sommerhauser* contended that the agency had improperly designated his Sunday work as overtime. He maintained that, as an FLSA-covered employee, "his overtime hours must be the last hours of his workweek," and not "the first hour of his regularly scheduled tour." *Id.* at 536–37. The Comptroller General disagreed, determining that Title 5, not the FLSA, applies when determining entitlement to premium pay. *Id.* And, pursuant to Title 5, "an agency may designate hours of work other than the last hours of the workweek or workday as overtime hours." *Id.* at 536, 538 (citing *Acuna v. U.S.*, 479 F.2d 1356, 1363 (Ct. Cl. 1973) *cert. denied,* 416 U.S. 905 (1974)). The Comptroller General concluded that the first hour of the employee's shift was properly designated as overtime, and that he therefore was not entitled to Sunday premium pay.

As in *Sommerhauser*, the first 15 minutes of plaintiffs' Monday morning watch shift are designated as overtime work. This designation is reflected in the MOU between the agency and the union, in which they agreed to the morning watch schedules. For every day except Monday, the MOU provides that the morning watch shift would extend from 11:45 p.m. until 8:00 a.m., with a 15 minute, duty-free break. A42. Applying this schedule to the Monday shift, however, would require paying the Sunday premium for the entire shift, even though only 15 minutes occurred on Sunday. *See* 5 U.S.C. § 5546 (requiring Sunday premium pay for an eight-hour shift "which is not overtime . . . , *a part of which* is performed on Sunday") (emphasis added).

The MOU avoided this result by providing special treatment for the Monday morning watch shift, namely, employees working that shift would "be paid fifteen minutes of overtime with no break being provided." A42. Because Sunday premium pay is not available for overtime work, the Monday morning watch shift was not Sunday work entitled to premium pay.

Indeed, the union and the agency agreed to this solution, in relevant part, "to reduce overtime costs *and Sunday premium pay*." A42 (emphasis added).  Although the MOU does not expressly state that overtime occurs during the first 15 minutes of the Monday morning watch shift, any other interpretation would result in paying both overtime and premium pay for that shift, which would directly contravene the MOU's stated goal to "reduce overtime costs and Sunday premium pay." A42.  The MOU thus reflects an agreement to designate the first 15 minutes of the Monday morning watch shift as overtime, to avoid paying Sunday premium pay for the entire shift.

This designation of overtime is further supported by a representative example of a time and attendance record for an employee working the Monday morning watch shift. A44–45; *see also* A50–53.  This record shows columns for each of the different shifts (Monday, Tuesday, Wednesday, et cetera), and rows indicating the "type of duty" performed in each shift.  A44.  The different types of duty include, in relevant part, (1) regular daytime duty, (2) regular night differential, (3) Sunday regular duty, (4) Sunday night differential, and (5) overtime duty.  A44.  As recorded, the Monday morning watch shift includes a quarter hour of overtime, two hours of regular daytime duty, and six hours of regular night differential.  The rows for Sunday regular duty and Sunday night differential are left blank, demonstrating that no "part" of the night differential occurs on Sunday.  *See* 5 U.S.C. § 5546.  This means that the two hours of regular daytime duty occur from 6:00 a.m. until 8:00 a.m., and the six hours of regular night differential occur from midnight until 6 a.m. on Monday.  The remaining quarter hour of overtime, therefore, must occur from 11:45 until midnight on Sunday.  Accordingly, the time and attendance worksheet confirms that the first 15 minutes of the Monday morning watch shift were designated as overtime, and thus ineligible for Sunday premium pay.

22

This case is therefore the same, in all material respects, as the facts in *Sommerhauser*, in which the Comptroller General held the employee was not entitled to premium pay.  58 Comp. Gen. at 536.  Just as the employee in *Sommerhauser* was assigned to work one hour of overtime on Sunday night before completing his shift from midnight until 8:00 a.m., plaintiffs working the Monday morning watch shift are assigned to work 15 minutes of overtime on Sunday night, before completing their shift from midnight until 8:00 a.m.  This work is  properly designated as overtime "even though it is performed before the 8 hours of the regular tour of duty."  *Id.* at 537. Accordingly, as in *Sommerhouser*, plaintiffs are not entitled to premium pay for the Monday morning watch shift.

For these reasons, the only reasonable interpretation of the MOU and the relevant records is that the first 15 minutes of the Monday morning shift are overtime work.  Accordingly, there is no genuine dispute of material fact that plaintiffs are not entitled to Sunday premium pay for that shift, and the Court should grant summary judgment denying their claim.

### B.  The Shift Is Not An "8-Hour Period Of Service"

The Monday morning watch shift does not qualify for Sunday premium pay for the additional reason that it is not an 8-hour period of service, as required by statute.  5 U.S.C. § 5546(a) (requiring that an employee perform work "during a regularly scheduled 8-hour period of service" to qualify for the Sunday premium).  Instead of being an 8-hour period of service, the Monday morning watch shift lasts for 8 hours and 15 minutes, extending from 11:45 p.m. on Sunday until 8:00 a.m. on Monday morning.  The shift is therefore 15 minutes longer than the statutory requirement, and does not qualify as an "8-hour period of service" as a matter of law.

**V.     For The Remaining Days, Plaintiffs Only Worked Eight Hours Per Shift And Therefore Are Not Entitled To Overtime**

Plaintiffs are not entitled to FLSA overtime for the remaining shifts each week, because they only worked eight hours per shift.  Pursuant to the FLSA and the implementing regulations issued by the Office of Personnel Management (OPM), an agency must compensate employees "for all hours of work in excess of 8 in a day or 40 in a workweek at a rate equal to one and one-half times the employee's hourly regular rate of pay."  5 C.F.R. § 551.501(a).  Work is defined as "all time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency."  *Id.* § 551.104.  "Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case."  *Armour & Co. v. Wantock*, 323 U.S. 126, 133 (1944).  An employee that brings an FLSA claim bears "the burden of proving that he performed work for which he was not properly compensated."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946), *superseded by statute on other grounds*, Portal-to-Portal Act of 1947, 61 Stat. 86–87, *as recognized in Integrity Staffing Solutions, Inc. v. Busk*, No. 13-433, 2014 WL 6885951, at *4 (S. Ct. Dec. 9, 2014).

There is no factual dispute regarding the agreed-upon morning watch schedules.  In the MOU, the union and the agency agreed that morning watch employees would work from 11:45 p.m. until 8:00 a.m., with a 15-minute, duty free break, thereby working only eight hours per shift.  They chose this schedule, in relevant part, "to maintain overlapping shifts while at the same time reduc[ing] overtime costs."  A42.  "During the personal break, the officer will not be required to perform any duties, with the exception of responding to an emergency situation."  A43.  In the event of an emergency, the officer will take the personal break "as soon as practical"

24

after the emergency is resolved.  A43.

The agency issued post orders consistent with this agreed-upon schedule.  The G-Floor post orders are representative, and direct G-Floor officers to begin their "fifteen minute personal break" at 2:15 a.m., at which time each G-Floor officer is relieved by another officer, who "assume[s] the duties" of the G-Floor.[5]  A47.  During this break, the officer is completely relieved from all duties, except in the event of "an emergency," in which case, the officer "must respond and . . . be compensated appropriately."  A47.

As discussed in further detail below, the Court should hold that the 15-minute break is not compensable work pursuant to the FLSA.  Not only has a 15-minute meal period previously been held noncompensable for purposes of calculating overtime, but the applicable regulations and administrative interpretations confirm that the 15-minute break in this case is not work.  Finally, relevant precedent supports designating the 15-minute break as noncompensable, because the plaintiffs were substantially, if not completely, relieved of their duties during that time.

## A.  This Court's Predecessor Held A 15-Minute Break Was Not Compensable

Under appropriate circumstances, a 15-minute break does not qualify as time worked for the purposes of determining overtime pay.  For example, in *Catalfamo v. United States*, the United States Court of Claims endorsed the Department of the Navy's schedule that required security guards to report 15 minutes early, but then granted a 15-minute meal break later in the

---

[5] Although officers assigned to the Compound post are not replaced by another officer during their breaks, A49, those officers are mobile throughout the institution, unlike the majority of morning watch officers who must remain in the unit (and are replaced during their breaks). Accordingly, even though they are not replaced by another officer, Compound post officers receive a duty free break. *See* A48 (stating "[n]o work related duties will be performed during non-duty hours").

25

shift.  200 Ct. Cl. 689, 693 (1973).  The court determined that the 15-minute meal break was not

work, because, in relevant part, "interruptions were infrequent," and when they occurred, "time

off [was] allowed to make up for them."  *Id.* at 695.  Because the Navy had properly offset the 15

minutes added to the beginning of the shift, the Court held that the security guards were not

entitled to overtime compensation.  *Id.* at 695.

As in *Catalfamo*, the plaintiffs' 15-minute break does not constitute compensable "hours

of work."  Just as the break in *Catalfamo* was "uninterrupted," the plaintiffs in this case are

relieved of duties during their 15-minute break.  *See id.* at 696.  It is true that plaintiffs may be

called back to duty in the event of an emergency, but the same was true in *Catalfamo*.

Moreover, although the overtime statute considered in *Catalfamo* was the Federal Employee Pay

Act (FEPA), "[t]he inquiry is the same under both FEPA and the FLSA."  *Agner v. United*

*States*, 8 Cl. Ct. 635, 637 (Cl. Ct. 1985) *aff'd*, 795 F.2d 1017 (Fed. Cir. 1986).  Accordingly,

pursuant to *Catalfamo*, the 15-minute break in this case is noncompensable, and plaintiffs are not

entitled to overtime for their eight-hour shifts.

### B.  The Break Is Not Compensable Pursuant to Applicable Regulations And Administrative Interpretations

OPM's regulations confirm that the 15-minute break is not worktime.  When determining

whether a break is compensable, such regulations distinguish between "rest periods" and "bona

fide meal periods."  A rest period "shall be considered hours of work" when it does not exceed

20 minutes. 5 C.F.R. § 551.411.  A bona fide meal period, on the other hand, is "not considered

hours of work."  5 C.F.R. § 551.411.  Notably, there is no rule that all breaks of 20 minutes or

less are rest periods; to the contrary, such periods are subject to "special scrutiny," but may

qualify as bona fide meal periods on a "case-by-case basis."  Department of Labor (DOL) Wage

and Hour Division Field Operations Handbook (FOH) § 31.23, *available at*

http://www.dol.gov/whd/FOH/FOH_Ch31.pdf.  As discussed further below, the 15-minute break

in this case is a bona fide meal period, not a rest period, because employees are completely

relieved of their duties.

The Department of Labor (DOL) has provided guidance for determining when a break is

a "bona fide meal period" versus a "rest period," and OPM's use of the same terms suggests

OPM has incorporated such guidance into its regulations.  *See Zumerling v. Devine*, 769 F.2d

745, 750 (Fed. Cir. 1985) (stating that OPM should interpret the FLSA consistently with the

DOL's regulations, interpretations, and opinions).[6]  In particular, DOL has explained that

"[b]ona fide meal periods" require that the employee is "completely relieved from duty for the

purpose of eating regular meals." 29 C.F.R. § 785.19(a).  Rest periods, on the other hand,

include "coffee breaks or time for snacks," which are compensable.  *Id.* § 785.19(a).  "Ordinarily

30 minutes or more is long enough for a bona fide meal period," although "[a] shorter period

may be long enough under special conditions."  *Id.*

Certain special conditions that favor treating a break as a bona fide meal period include

whether such break: (1) has only "sporadic and minimal" work-related interruptions, (2) provides

"sufficient time to eat a regular meal," (3) "comes at a time of the day or shift that meals are

normally consumed," and (4) results from "an agreement (e.g. [collective bargaining agreement])

between the employees and employer that the period of less than 30 minutes is sufficient to eat a

regular meal."  FOH § 31.23.  These special conditions should "be considered in context on a

case-by-case basis."  FOH § 31.23.

---

[6]  *See also* H. Rep. No. 93–913, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N.
2811, 2837.

Applying these factors to this case, the 15-minute, duty free break is a bona fide meal period that is not compensable pursuant to the FLSA.  First, as agreed in the MOU and set forth in the post orders, the 15-minute break has "minimal," if any, work-related interruptions.  *See* FOH § 31.23(a).  Such interruptions are permitted only when there is an "emergency."  A42.  Any time spent responding to that emergency is not counted toward the 15-minute break and the employee is either allowed to complete the break or is compensated for the loss of the break.  A42, 46–47.  Moreover, in contrast to the "office employee who is required to eat at his desk"— whose break is not a bona fide meal period, 29 C.F.R. § 785.19(a)—the officers are completely relieved from duty during their break.  Indeed, the post orders state that, barring an emergency, "[n]o work related duties will be performed during non-duty hours."  A46–47; *see also* A42 (stating the 15-minute break is "duty free").  Accordingly, factor one favors treating the 15-minute break as a bona fide meal period, because plaintiffs are relieved from duty, and do not have any "work related interruptions."  FOH § 31.23(a).

In the unique context of this overnight shift, the second and third factors also favor treating the 15-minute break as a bona fide meal period.  Although "special scrutiny" is warranted for periods of less than 20 minutes, the 15-minute break is sufficient time for the officers to eat a meal, if they so choose.  FOH § 31b23(b); *see also Catalfamo*, 200 Ct. Cl. at 689.  Indeed, the 15-minute period "is not just a short break for snacks and/or coffee," FOH § 31b23(c), but is instead a substantial period of time during which the officer is completely relieved of duty by another relief officer, A47.  And, to the extent that any point in the morning watch shift is a time "that meals are normally consumed," the breaks occur at the rough equivalent of noon hour—that is, between three to four hours after the start of the shift.  *See, e.g.*, A45.

28

The fourth factor is especially significant in this case, because "[t]here is an agreement" between the union and the agency to treat the 15 minute period as noncompensable.  FOH § 31b23(d).  The DOL previously found that a 20-minute break was noncompensable based, in part, on a similar agreement.  Opinion Letter, 2004 WL 3177871 (Dep't of Labor Nov. 22, 2004).  In that case, the employees agreed that a 20-minute period "was sufficient," and the DOL concluded "that the agreed upon period" was "a bona fide (uncompensated) meal period."  *Id.*

Like the "agreed upon period" in the DOL opinion letter, the union and the agency in this case agreed that the 15-minute break is not work pursuant to the FLSA.  Indeed, the MOU treats the 15-minute break as noncompensable.  A42.  The only day without such a break—the Monday morning watch shift—receives 15 minutes of overtime *because* no break is provided.  A42.  Shifts with the 15-minute break, on the other hand, do not receive overtime compensation.  A42.  The MOU's stated purpose of "reduc[ing] overtime costs" further reflects the union and agency's agreement that the break is not compensable.  A42.  Given this agreement, there can be no genuine factual dispute that the 15 minute break is a bona fide meal period that is not compensable pursuant to the FLSA.

### C. Applicable Precedent Confirms That The 15-Minute Break Is Not Work

Finally, applicable precedent confirms that the 15-minute break is not work.  The Supreme Court has defined work as "physical or mental exertion . . . controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business."  *Armour*, 323 U.S. at 132.  "Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case."  *Id.* at 133.  Under this analysis, time is spent primarily for the employee's benefit when the employee is substantially relieved from all duties.  *Agner*, 8 Cl. Ct. at 637 ("If they are relieved

29

of substantial duties, they are following their own pursuits not the employer's.").

Indeed, this Court's prior cases addressing whether a meal period is compensable have focused on whether the employee is substantially relieved from duty.  *See, e.g.*, *Aamold v. United States*, 39 Fed. Cl. 735, 740-741 (1997) (citing *Baylor v. United States*, 198 Ct. Cl. 331 (1972)); *see also Agner*, 8 Cl. Ct. at 637.  As discussed, there can be no genuine dispute that plaintiffs in this case are at least substantially relieved, if not completely relieved, of their duties during the 15-minute break.  Accordingly, such time is not spent predominantly for the employer, and is not work pursuant to the FLSA.  The Court should therefore grant summary judgment that plaintiffs only worked eight hours per shift, and are not entitled to the 15 minutes of overtime that they seek.

## VI.    There Is No Willful Violation Of The FLSA, Because Plaintiffs' Schedule Was Agreed Upon By The Union And The Agency

Even assuming that plaintiffs could prove an FLSA violation—which they cannot—they are subject to the FLSA's two-year statute of limitations, instead of the three-year period that applies in cases of a willful violation.  *See* 29 U.S.C. § 255(a).  There is no genuine factual dispute that the agency reasonably believed its schedule was in compliance with the FLSA, so the Government is entitled at least to partial summary judgment that the two-year statute of limitations applies in this case.

The FLSA imposes a two-year statute of limitations, unless the plaintiff can prove "a willful violation" of the FLSA, in which case the limitations period is extended to three years. 29 U.S.C. § 255(a).  To prove a willful violation, the plaintiff must show "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988); *see also* 5 C.F.R.

§ 551.104.  Courts have declined to find a willful violation of the FLSA when the policy or

schedule at issue resulted from "lengthy negotiations" between the union and the employer.

*See, e.g.*, *Howard v. City of Springfield, Ill.,* 274 F.3d 1141, 1144 (7th Cir. 2001) (affirming that

defendant city did not act willfully when it paid its police officers according to a collective

bargaining agreement negotiated with the union); *Caraballo v. City of Chicago*, 969 F. Supp. 2d

1008, 1024-25 (N.D. Ill. 2013) (holding that plaintiffs failed to prove a willful FLSA violation

when the employer "demonstrated that its policy for paying paramedics was the result of lengthy

negotiations with the union regarding the applicable [collective bargaining agreement]").

Plaintiffs cannot prove that the agency "either knew" of an FLSA violation "or showed

reckless disregard" for the FLSA's standards when establishing the morning watch schedules.

Those schedules resulted from negotiations between the agency and the union, and were agreed

upon in the MOU.  A42–43.  One of the stated purposes of the MOU was to reduce overtime

costs, which demonstrates that the union and the agency reasonably (and correctly) believed that

the morning watch schedules were in compliance with the overtime requirements of the FLSA.

A42.  Accordingly, the Government is entitled to summary judgment that any alleged violation

of the FLSA was not willful and does not invoke the three-year statute of limitations.

## Conclusion

For the foregoing reasons, we respectfully request that the Court grant summary

judgment dismissing plaintiffs' claims as barred by res judicata and by waiver.  In the

alternative, we request summary judgment denying plaintiffs' claims on the merits, because they

are not entitled to 15 minutes of overtime per shift, nor Sunday premium pay.  Should the Court

not completely dismiss plaintiffs' claims, we ask for partial summary judgment that the

applicable statute of limitations is two years, instead of the three years for a willful FLSA

violation.  Finally, pursuant to RCFC 12(a)(4), we respectfully request 14 days to respond to

plaintiffs' complaint, in the event that the Court denies this motion in whole or in part.

Respectfully submitted,

JOYCE BRANDA
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/Emma E. Bond
EMMA E. BOND
Trial Attorney
OF COUNSEL                              Commercial Litigation Branch
ADAM W. BOYER                           Civil Division
Assistant General Counsel               Department of Justice
U.S. Department of Justice              P.O. Box 480
Federal Bureau of Prisons               Ben Franklin Station
Employment Law Branch                   Washington, D.C. 20044
344 Marine Forces Drive                 Tele:  (202) 353-0521
Grand Prairie, Texas 75051              Fax:   (202) 514-8624

December 19, 2014                        Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of December 2014, a copy of the foregoing

"DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically.  I

understand that notice of this filing will be sent to all parties by operation of the Court's

electronic filing system.  Parties may access this filing through the Court's system.

<u>s/ Emma E. Bond</u>

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MATTHEW ALLENSWORTH, *et al.*,        )
                                      )
                    Plaintiff,        )
                                      )        No. 14-1019
            v.                        )        (Judge Thomas Wheeler)
                                      )
UNITED STATES,                        )
                                      )
                    Defendant.        )

## DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(h)(1) of the Rules of the United States Court of Federal Claims (RCFC), the United States respectfully submits the following proposed findings of uncontroverted fact in support of its motion for summary judgment:

1. Plaintiffs are current and former employees employed by the United States Federal Bureau of Prisons at the Federal Correctional Institution located in Texarkana, Texas (BOP or agency).  Compl. 3.

2. At all relevant times, the American Federation of Government Employees (AFGE or union) was the national union and exclusive representative for all bargaining unit employees of the agency, including correctional officers.  A16, 18.[1]

3. The Master Agreement, signed in 1998, constituted the collective bargaining agreement between the agency and the union until it was replaced in July 2014.  A16–17, A38.

4. Local No. 2459 (hereinafter also referred to as the union) is an official designated agency of the AFGE Council of Prison Locals.  A23–25, 42.

---

[1]  A___ refers to a page in the appendix filed with the Government's motion for summary judgment.

5. All correctional officers are bargaining unit members of the union.  A18; 5 U.S.C. § 7111; 5 C.F.R. § 2421.14.

6. Plaintiffs allege that they are, and have been in the past, correctional officers assigned to work the morning watch shift. Compl. ¶¶ 9–10.

7. In May 2004, the agency signed a memorandum of understanding (MOU) with the union, agreeing to a schedule for correctional officers assigned to the morning watch shift. A42–43.

8. The MOU provides that Perimeter Patrol 1 and Perimeter Patrol 2 morning watch positions have duty hours from 12:00 a.m. until 8:00 a.m. A42.  These positions are not at issue in this case.

9. The MOU further provides that the remaining morning watch positions (hereinafter morning watch positions) have duty hours from 11:45 p.m. until 8:00 a.m. A42.

10. The morning watch positions receive a 15-minute "duty free" personal break each day, except for the Monday morning watch shift.  A42, 46–47.

11. On the Monday morning watch post, employees do not receive a fifteen minute break, but they are paid 15 minutes of overtime for the first 15 minutes of the shift. A42–53.

12. The agency and the union agreed to this schedule to "maintain overlapping shifts while at the same time reduce overtime costs and Sunday premium pay and avoid any future portal to portal issues or claims."  A42.

13. The agency reasonably believed the morning watch schedule complied with the FLSA's overtime provisions.  A42.

14. The morning watch schedule established by the MOU has been in place from 2004 until the present.  A42–53.

2

15. On December 31, 2013, the union filed a grievance with the agency, alleging "[a] continuing violation of the Master Agreement . . . , including but not limited to . . . Article 3, section b., Governing Regulations." A11–14.

16. The grievance alleged "a continuing violation of the overtime laws under Section 7 of the Fair Labor Standards Act . . . , as well as the Office of Personnel Management regulations implementing the FLSA."  A11.

17. The grievance further alleged "a continuing violation of the premium pay laws providing premium pay under Title 5, 5 U.S.C. [§] 5546, and implementing regulations such as 5 CFR [§] 550.171 and 5 CFR [§] 550.103." A11 –14.

18. The issues identified in the grievance included allegations that the agency required bargaining unit employees "to perform work prior to and after the completion of their shifts."  A11.  In particular, it alleged, "[t]he Agency requires certain unit employees to perform work prior to their tour of duty, such as receiving or returning equipment, exchanging information, etc." A11, 13.

19. The grievance alleged that "[t]he portal issues per week are as follows but not limited to: Morning Watch G floor – Sunday, Monday, Tuesday," and "Compound 2 – Thursday and Friday," and others. A11–12.

20. The grievance sought "relief to the fullest extent available under the law" and requested "that each affected bargaining unit member who expresses interest in receiving damages . . . be made whole in every way including but not limited to an award of back pay under the FLSA and Title 5."  A12.

21. The grievance further requested liquidated damages, attorney fees, and expenses incurred pursuant to Section 16(b) of the FLSA, as well as interest pursuant to the Back Pay Act, and attorney fees pursuant to the Back Pay Act. A12, A14.

22. On February 3, 2014, the union invoked arbitration for the grievance. A11.

23. The Master Agreement between the union and the agency governed the relevant procedures for arbitration. 32–34.

24. The parties selected an arbitrator. A8–10.

25. Before the arbitration proceeded to a hearing, the union and the agency entered into a settlement. A1–10.

26. The union entered into the settlement on behalf of its bargaining members, including the plaintiffs. A1–2.

27. The agency agreed to pay back pay of $85,000.00, to be distributed among "current and former bargaining unit employees who [were] entitled to receive damages." A2.

28. The agency also agreed to pay $56,375 in attorney fees to the attorneys representing the union. A3.

29. In consideration for this payment, the union "remise[d], release[d], and forever irrevocably discharge[d] the United States Government, the Bureau of Prisons, [et cetera] . . . , from the claims asserted in this grievance, from January 2, 2011, up to the date that this Agreement is fully executed." A5.

30. The settlement agreement was executed on October 23, 2014. A7.

31. On October 20, 2014, plaintiffs filed suit before this Court alleging violations of the Back Pay Act and the FLSA. Compl. 10.

4

Respectfully submitted,

JOYCE BRANDA
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

s/Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/Emma E. Bond
EMMA E. BOND
Trial Attorney
OF COUNSEL                          Commercial Litigation Branch
ADAM W. BOYER                       Civil Division
Assistant General Counsel           Department of Justice
U.S. Department of Justice          P.O. Box 480
Federal Bureau of Prisons           Ben Franklin Station
Employment Law Branch               Washington, D.C. 20044
344 Marine Forces Drive             Tele:  (202) 353-0521
Grand Prairie, Texas 75051          Fax:   (202) 514-8624

December 19, 2014                   Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of December 2014, a copy of the foregoing

"DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT" was filed

electronically.  I understand that notice of this filing will be sent to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.


<u>s/ Emma E. Bond</u>