# In the United States Court of Federal Claims

No. 14-1019C

(Filed: June 26, 2015)

| | |
|---|---|
| ************************************* * <br> MATTHEW ALLENSWORTH, *et al.*, * <br> * <br> Plaintiffs, * <br> * <br> v. * <br> * <br> THE UNITED STATES, * <br> * <br> Defendant. * <br> * <br> ************************************* | Claims for Overtime and Sunday Premium Pay; Bureau of Prisons Correctional Officers; Arbitration Settlement; Res Judicata Effect. |

*Sara L. Faulman*, with whom was *Diana J. Nobile*, Woodley & McGillivary, LLP, Washington, D.C., for Plaintiff.

*Emma E. Bond*, with whom were *Benjamin C. Mizer*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Deborah A. Bynum*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER ON
CROSS-MOTIONS FOR SUMMARY JUDGMENT

WHEELER, Judge.

Plaintiffs are 88 current and former correctional officers employed by the United States Bureau of Prisons ("BOP") at the Federal Correctional Institution in Texarkana, Texas ("FCI Texarkana"). Plaintiffs bring the current action seeking a declaratory judgment, back pay, and other relief to remedy Defendant's alleged violations of the Fair Labor Standards Act ("FLSA") and Title 5 of the U.S. Code. Specifically, Plaintiffs assert that Defendant has violated and continues to violate Section 7(a) of FLSA by failing to pay overtime for daily, uncompensated fifteen-minute rest breaks. Plaintiffs also allege that Defendant has violated and continues to violate 5 U.S.C. § 5546 by failing to pay Sunday premium pay for shifts beginning at 11:45 p.m. on Sunday.

Defendant filed a motion for summary judgment on December 19, 2014. Defendant's motion primarily relates to claims alleged to have been settled and precluded by an October 23, 2014 agreement between the agency and the American Federation of Government Employees Council of Prison Locals, Local No. 2459 ("Union"). By its terms, the agreement does not purport to settle any continuing violations beyond October 23, 2014. However, as the agreement relates to the subject of Plaintiffs' claims, Defendant argues that the agreement bars Plaintiffs from re-litigating those same claims under the doctrine of res judicata. In the alternative, Defendant argues that the overtime and premium pay claims should be dismissed on the merits. Additionally, Defendant argues that a two-year statute of limitations should apply to Plaintiffs' claims for failure to prove a willful violation of the FLSA. Plaintiffs responded and cross-moved for summary judgment on February 13, 2015, arguing that the settlement agreement did not cover the overtime and premium pay claims raised in this action. Plaintiffs also argued that they were entitled to summary judgment on the merits of their claims, and seek further discovery to prove a willful violation of the FLSA. Defendant responded and replied on March 30, 2015, and Plaintiffs replied on April 24, 2015. The Court heard oral argument on the motions on May 15, 2015. The motions are ready for decision.

Factual Background

The BOP assigns Plaintiffs to work as correctional officers on three different daily shifts: the Morning Watch shift, the Day Watch shift, and the Evening Watch shift. Compl. 4-5. This case concerns only the Morning Watch shift, which runs from 11:45 p.m. until 8:00 a.m. the following morning. Id. at 5. Plaintiffs work five Morning Watch shifts per week, though these shifts occur seven days a week. Id. While on this shift, Plaintiffs perform such tasks as clearing a staff-dedicated screening site, obtaining and donning equipment, maintaining a state of alertness and vigilance at all times, engaging in equipment and information exchanges, engaging in correctional officer work, and returning equipment to the Agency's Control Center. Id. The BOP provides Plaintiffs a fifteen-minute uncompensated break period, during which the "officer will not be required to perform any duties." Def.'s Mot. for Summ. J. (Def.'s Mot.) at 3. However, Plaintiffs allege that they perform at least eight hours and fifteen minutes of work every day they are assigned, but are only compensated for eight hours each day. Compl. 5. For those persons working on Tuesday through Sunday, Plaintiffs allege this uncompensated work results in a violation of FLSA. Id.

For those Plaintiffs working the Monday Morning Watch shift, which begins at 11:45 p.m. on Sunday and ends at 8:00 a.m. Monday, Plaintiffs receive fifteen minutes of overtime pay for the first fifteen minutes of the shift, and then eight hours of standard pay.

Def.'s Mot. at 3.  However, Plaintiffs allege that the Sunday work violates 5 U.S.C. § 5546 by failing to provide Sunday premium pay instead of overtime pay.  Compl. 5.

The BOP negotiated the Morning Watch schedule with the Union, which is the exclusive representative for all bargaining unit employees of the agency, including correctional officers.  Def.'s Mot. at 4.  The Union and the agency signed a Memorandum of Understanding ("MOU") in May 2004 agreeing to the Morning Watch schedule and they have adhered to the MOU since that time.  Id.  The MOU provides that Morning Watch shifts, except for Monday, have duty hours from 11:45 p.m. to 8:00 a.m., and the officers receive a fifteen-minute uncompensated break each shift, during which they are relieved from duty.  Id.; Def.'s Appx. at A42.  Further, the Union agreed in the MOU to fifteen minutes of overtime pay for the Monday Morning Watch shift, with no break time.  Id.  The Union and the BOP agreed to these schedules in order to "maintain overlapping shifts while at the same time reduce overtime costs and Sunday premium pay and avoid any future portal to portal issues or claims."  Id.

Approximately ten months before Plaintiffs filed the present claim in this Court, the Union invoked arbitration to resolve an overtime and premium pay grievance.  Def.'s Mot. at 5.  The grievance addressed continuing violations of the overtime laws pursuant to FLSA and premium pay under Title 5.  Id.; Def.'s Appx. at A11.  The violations alleged in the grievance included, but were "not limited to," morning watch posts.  Id. at A11-12.  The grievance primarily complained of the BOP improperly requiring employees "to perform work prior to and after the completion of their shifts," otherwise known as "Portal-to-Portal" issues.  Id. at A11.  As compensation for the violations, the Union sought back pay under FLSA and Title 5, as well as liquidated damages, attorneys' fees, interest and expenses.  Def.'s Mot. at 5.

Prior to formal arbitration, the parties reached an agreement "in full and complete settlement" of the arbitration.  Def.'s Appx. at A1.  The BOP agreed to pay $85,000.00 to the Union, to be distributed to "current and former bargaining unit employees who are entitled to receive damages," as well as $56,375.00 in attorneys' fees.  Id. at A2, 4.  In exchange, the Union agreed that "no other action or suit with respect to the claims that are set forth in the grievance . . . will be filed in, or submitted to, any court or any administrative forum."  Id. at A1-2.  The Union and the BOP executed the agreement on October 23, 2014, three days after Plaintiffs filed suit in this Court.  Id. at A7.

3

Discussion

I.     Jurisdiction

The parties agree that the Court has jurisdiction over FLSA and Title 5 claims pursuant to its Tucker Act jurisdiction. 28 U.S.C. § 1491. The applicable money-mandating statutes are the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., and the Back Pay Act, 5 U.S.C. § 5596.

II.    Standard of Review

Summary judgment is appropriate where the evidence demonstrates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." RCFC 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–49 (1986); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008). A "genuine" dispute is one that "may reasonably be resolved in favor of either party," Anderson, 477 U.S. at 250, and a "material" fact is one that "might affect the outcome of the suit under the governing law[.]" Id. at 248. The moving party carries the burden of establishing its entitlement to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). Once that burden is met, the onus shifts to the non-movant to identify evidence demonstrating a dispute over a material fact that would allow a reasonable finder of fact to rule in its favor. Anderson, 477 U.S. at 256. It is not necessary that such evidence be admissible, but mere denials, conclusory statements, or evidence that is merely colorable will not defeat summary judgment. Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 249–50.

In considering a motion for summary judgment, a court does not weigh each side's evidence but, rather, must draw all inferences in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, as here, the parties have filed cross-motions for summary judgment, the Court evaluates each motion on its own merits and makes all reasonable inferences against the party whose motion is under consideration. Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968–69 (Fed. Cir. 2009) (internal citation omitted). To the extent a genuine issue of material fact exists, both motions must be denied. Id. at 969.

III.   Res Judicata

"Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action." Stearn v. Dep't of Navy, 280 F.3d 1376, 1380 (Fed. Cir. 2002) (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)). The parties agree that the "Federal

4

Circuit is broadly guided by the Restatement (Second) of Judgments" ("Restatement"). Pl.'s Opp. at 14; Acumed LLC v. Stryker Corp., 525 F.3d 1319, 1323 (Fed. Cir. 2008) (stating the Federal Circuit is guided by the Restatement "[i]n applying the doctrine of claim preclusion").  Under the Restatement, a claim, when extinguished, includes "all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement § 24(1).  A factual grouping constitutes a "transaction" when the facts are "related in time, space, origin, or motivation," and when they "form a convenient trial unit" that "conforms to the parties' expectations or business understanding or usage."  Id. § 24(2).  "A common set of transactional facts is to be identified 'pragmatically.'"  Jet, Inc. v. Sewage Aeration Systems, 223 F.3d 1360, 1363 (Fed. Cir. 2000) (quoting Restatement §24(2)).

There are three elements necessary for res judicata, also known as "claim preclusion," to apply: (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first.  Phillips/May Corp. v. United States, 524 F.3d 1264, 1268 (Fed. Cir. 2008) (citation omitted).  "A determination of whether res judicata applies to the facts of a case is a matter of law."  Stearn, 280 F.3d at 1380.

    A. Privity of Parties

The first element of applying res judicata is to determine whether the parties in this action are identical to, or in privity with, the parties in the original action.  Here, the prior arbitration and settlement agreement constitute the original action.  The Defendant is identical in this case as in the arbitration proceeding because BOP, the original defendant, is part of the United States Government.  The Plaintiff correctional officers are not identical in both proceedings, but Plaintiffs here are in privity with the Union, which brought the original action.  Parties are in privity when they "hav[e] a legally recognized interest in the same subject matter (such as transaction, proceeding, or piece of property)." Black's Law Dictionary 9th ed. ("privity").  Generally, "[u]nion members are considered to be in privity with their union for purposes of res judicata."  Proctor v. District of Colombia, CV 13-00985, 2014 WL 6676232, at *8 (D.D.C. Nov. 25, 2014).  The Union is the "exclusive representative of the employees in the unit it represents and is entitled to act for . . . all employees in the unit."  5 U.S.C. § 7114(a)(1).  When a union settles FLSA claims on behalf of its members, the members are bound.  See O'Connor v. United States, 308 F.3d 1233, 1241 (Fed. Cir. 2002) ("[T]he union acted on behalf of appellants to settle their FLSA claims. Appellants are therefore bound.").

Here, Plaintiffs had a "legally recognized interest" in the arbitration proceeding because they are collective bargaining members of the Union that invoked the arbitration.

5

The arbitration concerned FLSA and Title 5 grievances on behalf of correctional officers at FCI Texarkana, and thus concerned the same "subject matter" transaction or property: the agreed-upon work shifts outlined in the MOU.  The Union's president, John Tosh, is both the signatory of the settlement agreement on behalf of the bargaining unit and a named plaintiff in this case.  Def.'s Appx. at A7; Compl. 2.  Plaintiffs argue that only some of the Plaintiffs here were parties to the arbitration, but do not seriously contest that all bargaining unit members of the Union were in privity with the Union when it settled its FLSA claims in October 2014.  Whether or not all of the Plaintiffs here recovered damages in the prior arbitration is of little import.  All of the Plaintiffs were represented by the Union in that proceeding, which sought damages "for each affected bargaining unit member who expresses interest in receiving damages."  Def.'s Appx. at A12.  As Judge Eric Bruggink held in Addison-Taylor v. United States, a case involving grievance claims quite similar to the case at bar, "[t]he fact that not all bargaining unit members shared in the [settlement] payment does not mean that the settlement fails to constitute a resolution of their claims for back pay."  63 Fed. Cl. 345, 351 (2004).  Thus, Plaintiffs here were in privity with the Union, which signed the settlement agreement and cancelled the prior arbitration.

   B.  Judgment on the Merits

Under Restatement § 84(1), "a valid and final award by arbitration has the same effects under the rules of res judicata . . . as a judgment of a court."  Unless a "scheme of remedies requires that it be denied such effect," an arbitration that "has the elements of validity and [finality] . . . should be accorded claim preclusive effect. . . ."  Restatement § 84 cmt. b.  Plaintiffs do not seriously contest the validity of the arbitration proceeding, and the Court finds that the proceeding was valid under the Restatement.  The arbitrator had jurisdiction pursuant to the Union's agreed-upon grievance procedure, and the Union invoked the arbitration itself.  Further, the arbitration procedures contained all the "essential elements of adjudication," including notice, the presentation of witnesses, and a binding decision requirement.  Restatement §§ 84(3)(b), 83(2); Def.'s Appx. at A11, 32-33; Def.'s Mot. at 12.  Lastly, the arbitrator was not prohibited by the Master Agreement or any statutory scheme from hearing FLSA or Title 5 claims, as evidenced by the fact that the arbitration involved claims under those same laws.  Id. at 13.  Thus, the arbitration was a valid proceeding under the Restatement standards.

Further, a settlement agreement following an arbitration proceeding is sufficient to give res judicata effect.  The Federal Circuit has given preclusive effect to settlements, stating it is "widely agreed that an earlier dismissal based on a settlement agreement constitutes a final judgment on the merits in a *res judicata* analysis."  Ford-Clifton v. Dep't of Veterans Affairs, 661 F.3d 655, 660 (Fed. Cir. 2011).  Thus, the Court is satisfied that a settlement agreement cancelling a valid arbitration proceeding is generally sufficient to create claim preclusion.

C. Same Transactional Facts

The final element of the claim preclusion analysis is the most contentious. Plaintiffs claim that the Union did not raise the same overtime and premium pay issues in the arbitration proceeding that they raise here. In arbitration, the Union brought claims for compensation for so-called "Portal-to-Portal" violations, wherein the BOP failed to compensate officers for time spent working *before and after* their shifts, as well as premium pay violations. Here, Plaintiffs raise claims for uncompensated time *during the shift*, in addition to premium pay violations. While this distinction makes sense if the Court focuses closely on the parameters of the workday, it loses the requisite pragmatism demanded by the Restatement when the Court steps back for perspective.

The Restatement bars subsequent claims derived from the same "transaction, or series of connected transactions," which should be "determined pragmatically." Restatement §§ 24(1), 24(2). Plaintiffs' argument that the previous "Portal-to-Portal" claims are "very different and wholly unrelated to the issue of whether mid-day breaks are compensable work under the FLSA" is untenable when examined from a practical standpoint. Pl.'s Opp. at 5, n.7. Plaintiffs in effect seek to bring one claim for FLSA overtime violations at the beginning and end of a shift, and a completely separate claim for FLSA overtime violations that occur during the shift. Counsel for Plaintiffs surely are aware of the attorney fees provisions in FLSA that accompany a favorable judgment, but the Court cannot condone such unwarranted claim splitting. Any alleged FLSA violations occurring during the same or similar work shifts by the same or similar group of correctional officers should have been raised in the grievance and ensuing arbitration proceeding. The Court is unwilling to define the scope of these new claims so narrowly as to allow multiple legal proceedings to adjudicate FLSA overtime claims for different times of day.

Plaintiffs argue that in considering whether the actions are based on the same set of transactional facts, the Court should consider "whether the evidence necessary to prove one cause of action would establish the other." Pl.'s Opp. at 14; Jet, 223 F.3d at 1362–63. However, Plaintiffs' reliance on this language in Jet is misplaced. The quoted language is merely part of a string citation and, rather than emanating from the Jet court, derives from the 1894 Supreme Court case United States v. Haytian Rep., 154 U.S. 118, 125 (1894). The court in Haytian qualified this "test" as only "[o]ne of the tests laid down" to determine whether causes of action should have been joined in one suit. Id. Even under the Haytian evidence standard, the Court finds that the evidence required here would largely be the same as in the prior arbitration. For example, the work schedules and MOU would be the same or similar, and any testimony from BOP representatives or correctional officers would involve describing their duties, work times, break opportunities, and other similar

evidence. Additionally, the relevant standards for proving an FLSA or Title 5 violation would, naturally, be the same in both cases. The Court also looks to a case quoted earlier in the same string citation, Hermann v. Cencom Cable Assoc., Inc., 999 F.2d 223 (7th Cir. 1993) (citing Parsons Steel, Inc. v. First Ala. Bank, 474 U.S. 518, 521 (1986)), for the proposition that a set of transactional facts is to be defined in terms of the "same nucleus of operative facts," and "based on the same, *or nearly the same*, factual allegations." Id. at 226 (emphasis added). Claims for overtime violations at two different times in the same shift certainly involve "nearly the same" factual allegations. Thus, the Court does not accept Plaintiffs' attempt to parse the facts and requisite evidence unnecessarily.

Moreover, the court in Jet found res judicata inapplicable because the claims were based on different actions at law, one being a claim of trademark *infringement* and the other a petition to *cancel* the defendant's trademark. 223 F.3d at 1363. Thus, the Federal Circuit in Jet found that different types of factual allegations were required to prove each claim because of the differing legal relevance. For example, in the trademark infringement claim, one set of facts to be proven was the "plaintiff's possession of a valid registered trademark," whereas in the cancellation action, the plaintiff instead had to prove the "existence of a registered mark" by the defendant. Id. Here, however, both the arbitration and the current action are styled as claims under FLSA overtime provisions and Title 5's premium pay laws, and thus do not require a different *type* of proof or a different *subject* of facts. Indeed, the differences between the requisite proof in the arbitration and the proof required here relate primarily to the time of day that Plaintiffs performed extra work. Such a minor difference in factual development does not merit the filing of two distinct actions.

Lastly, Plaintiffs focus on the fact that the settlement agreement, by its own language, only settled the Portal-to-Portal claims. Plaintiffs seem to believe that as long as the settlement did not expressly cover the claims they now bring, they should not be precluded from suit. Although they convincingly argue that the prior arbitration only covered FLSA violations pre- and post-shift as opposed to mid-shift, Plaintiffs are unpersuasive when explaining why their mid-shift claims *should not* or *could not* have been brought earlier. The Court cannot overlook the expansive language in the Restatement when applying the doctrine of res judicata. Further, the Court is cognizant of the spirit and purpose of res judicata, which is to prevent excessive or repetitive litigation. When evaluated holistically, Plaintiffs' suit here is one that should have been brought with the Union's "Portal-to-Portal" grievance, as both claims relate to FLSA and Title 5 violations during the same or similar work shifts at FCI Texarkana. The evidence necessary to prove the claims would be similar, and bringing the claims together would have been of desirable efficiency. Surely the facts involved in both claims are "related in time, space, origin, or motivation," and would "form a convenient trial unit" that "conforms to the parties' expectations" of when all of the FLSA claims would be resolved. Restatement § 24(2). To allow Plaintiffs to split their claims by time of day would be a waste of both Defendant's

and the Court's resources, and create an unfair opportunity for Plaintiffs to receive excessive attorneys' fees.

Accordingly, Plaintiffs' FLSA and Title 5 claims from January 2, 2011 to October 23, 2014 are barred by res judicata. The Court need not conduct a waiver analysis.

IV.     Merits of Continuing Premium Pay Claims

The Court is satisfied that the disputes regarding the continuing Title 5 premium pay claims in this case concern only the law, and no material facts are in dispute on this issue. Thus, the Court finds summary judgment on Plaintiffs' continuing Title 5 claims to be appropriate.

Defendant asserts that Plaintiffs are not entitled to Sunday premium pay for shifts beginning at 11:45 p.m. on Sunday and ending at 8:00 a.m. on Monday because Plaintiffs are paid overtime for the first fifteen minutes of the shift, and the rest of the time is considered a regular eight-hour shift. Def.'s Mot. at 20. Overtime work is not the same as Sunday premium pay. Id. Defendant further contends that premium pay under Title 5 only applies to an "8-hour period of service," which does not apply to the eight-hour-and-fifteen-minute shift at issue here. Plaintiffs, conversely, argue that the overtime portion of the shift occurs at the end of the shift, and that the current work shifts violate Title 5 for failure to assign the same working hours on each day of the basic work week. 5 U.S.C. § 6101(a)(3)(C). Plaintiffs argue that the Monday Morning Watch includes an eight-hour shift followed by fifteen minutes of overtime, whereas the other days of the week the officers work eight hours and fifteen minutes with a fifteen-minute break in the middle of the shift. Pl.'s Opp. at 31. Accordingly, Plaintiffs argue that Defendant's schedule violates Title 5 for failing to maintain the same working hours each work day, and for failing to pay Sunday premium pay.

First, the Court considers whether the "overtime" portion of the shift occurs at the beginning or the end of the shift. Plaintiffs seem to rely only on the vernacular usage of "overtime" to support their claim that the overtime portion occurs at the end of the shift, or from 7:45 a.m. to 8 a.m. However, Defendant cites a Comptroller General decision holding the opposite in the context of FLSA overtime hours: pursuant to Title 5, "an agency may designate hours of work other than the last hours of the workweek or workday as overtime hours." In re Sommerhauser, B-189197, 1979 WL 14970 (Comp. Gen. May 16, 1979). The Court is persuaded that Defendant properly designated the first fifteen minutes of the Monday Morning Watch shift as overtime. It follows, then, that Plaintiffs cannot claim Sunday premium pay for that shift because employees are only entitled to Sunday premium pay for work "which is not overtime work as defined by section 5542(a) of [Title 5]." 5 U.S.C. § 5546(a). Here, the only Sunday work in the Monday Morning Watch shift is

9

designated as overtime work, and thus is non-compensable as premium pay. The Union and the BOP even agreed to this overtime designation in a joint effort "to reduce overtime costs and Sunday premium pay." Def.'s Appx. at A42.

Further, Plaintiffs' claims about the same working hours requirement is undermined by the exception to the rule, which states that the agency is not required to impose the same working hours "when the head of an agency determines . . . that costs would be substantially increased." 5 C.F.R. § 610.121(a); see also 5 U.S.C. § 6101(a)(3)(C). Surely, applying the same working hours to the Monday Morning Watch shift would "substantially increase[]" costs because Defendant would be forced to pay premium pay for the entire shift. In what is clearly an effort to avoid these costs, the BOP and the Union agreed in the MOU to designate the first fifteen minutes as overtime to "reduce . . . Sunday premium pay." Def.'s Appx. at A42. OPM regulations define the "head of an agency" to include any supervisor delegated the power to schedule an employee's overtime. 5 C.F.R. § 610.102. Marina Medina, the Associate Warden who signed the MOU with the Union representative, is a supervisor delegated the power to schedule the correctional officers' overtime. Def.'s Appx. at A43. Thus, the Court is satisfied that the BOP properly employed the exception to the same working hours requirement in an effort to reduce costs. Pursuant to the MOU and the agency's authority to reduce costs, Plaintiffs receive overtime compensation for the first fifteen minutes of the shift and regular pay thereafter. Accordingly, the Court finds that Plaintiffs are not entitled to Sunday premium pay for the shift beginning at 11:45 p.m. on Sunday evening.

V. Merits of Continuing Overtime Claims

The Court finds that discovery and trial will be necessary to adjudicate the merits of the continuing overtime claims. Material facts remain in dispute, including whether Plaintiffs actually worked more than eight hours per shift, and whether a fifteen-minute break is sufficient for a meal, as Defendant claims. Thus, the cross-motions for summary judgment on the continuing overtime claims are denied.

VI. Willfulness and Statute of Limitations

A three-year statute of limitations applies to "willful" violations of the FLSA. 29 U.S.C. § 255(a). Adams v. United States, 350 F.3d 1216, 1229 (Fed. Cir. 2003). Plaintiffs bear the burden of proving willfulness. Bull v. United States, 68 Fed. Cl. 212, 272 (2005). However, because the Court finds the settlement agreement to have preclusive effect, an extended statute of limitations has no relevance to this case. Any claims that accrued prior to the settlement agreement are more than three years old, and any continuing claims since the filing of this action cannot be barred by a statute of limitations. Thus, the Court finds any Rule 56(d) discovery on willfulness to be unnecessary.

<u>Conclusion</u>

Based upon the foregoing, the Court GRANTS IN PART Defendant's motion for summary judgment, and DENIES Plaintiffs' motion for summary judgment. Pursuant to Rule 12(a)(4) of the Court, Defendant should file its answer to the complaint within fourteen days, on or before July 10, 2015.

IT IS SO ORDERED.

<u>s/ Thomas C. Wheeler</u>
THOMAS C. WHEELER
Judge
